U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 3 1 2018

CLERK U.S. DISTRICT COURT
By: _____
    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANTHONY SIMMONS,<br>    PLAINTIFF, | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:17-CV-684-A-BJ |
| NANCY A. BERRYHILL,<br>ACTING COMMISIONER OF<br>SOCIAL SECURITY,<br>    DEFENDANT. | § § § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

#### I.  STATEMENT OF THE CASE

Plaintiff Anthony Simmons filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). On July 7, 2014, Simmons protectively filed an application for SSI, alleging his disability began February 21, 2014. (Transcript ("Tr.") 11; *see* Tr. 187–91.) After his application for SSI was denied both initially and on reconsideration, Simmons requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 11; *see* Tr. 130–45.) The ALJ held a hearing on April 4, 2016 and issued a decision on June 2, 2016 in which the ALJ found Simmons was not

disabled. (*See* Tr. 8–19; *see* Tr. 23–49.) Thereafter, on June 15, 2017, the Appeals Council denied Simmons' request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1–5.) Simmons subsequently filed this civil action seeking review of the ALJ's decision.

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. § 416 (SSI). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920.

First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing. 20 C.F.R. § 416.920(d). Before considering Step Four of the sequential evaluation process, the undersigned must first determine the claimant's residual function capacity. 20 C.F.R. § 416.920(e). An individual's residual function capacity ("RFC") is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 416.920(e). Fourth, if disability

cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. 20 C.F.R. § 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The Commissioner's determination is afforded great deference. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett*, 67 F.3d at 564; *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Simmons presents the following issue:

Whether the ALJ followed the legal standard in Social Security Ruling ("SSR") 82-59 when considering whether Simmons complied with the prescribed medical treatment.

(Plaintiff's Brief ("Pl's Br.") at 1, 12–20.)

### IV. ALJ DECISION

In his June 2, 2016 decision, the ALJ found that Simmons was not disabled within the meaning of the Social Security Act. (Tr. 11.) In making his decision, the ALJ proceeded to follow the five-step sequential evaluation process set forth above. (Tr. 13-19.) At Step One, the ALJ found that Simmons did not engage in substantial gainful activity since July 7, 2014, the date Simmons filed his application for SSI. (Tr. 13.) At Step Two, the ALJ found that Simmons had the following "severe" impairments: (1) schizoaffective disorder, (2) bipolar disorder, (3) diabetes mellitus, (4) lumbar disorder status post fusion, (5) left shoulder impairment status post two surgeries, and (6) status post neck surgery. (Tr. 13.) At Step Three, the ALJ found that Simmons did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13.)

At Step Four, as to Simmons' RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; sit/stand option at will for a total of 8 hours in an 8 hour workday with the ability to perform work in either position; cannot climb, crawl, kneel or squat; occasionally stoop/crouch; not work over shoulder level; not work with the general public; superficial contact with coworkers and supervisors; can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in the work setting.

4

(Tr. 15 (emphasis omitted).)   At Step Five, the ALJ concluded, based on his RFC assessment, that Simmons is unable to perform any of his past relevant work. (Tr. 18.) However, based upon the testimony of the vocational expert ("VE"), the ALJ found that Simmons was capable of performing other jobs that existed in significant numbers in the national economy. (Tr. 18-19.) Accordingly, the ALJ found that Simmons was not disabled, as defined in the SSA, since July 7, 2014, the date he applied for SSI. (Tr. 19.)

## V.   DISCUSSION

In his brief, Simmons argues that the ALJ "ignored the law when determining Simmons' residual functional capacity . . . because it was not what Simmons could actually do, but a projected RFC based on presumed compliance with his medications." (Plaintiff's Brief ("Pl.'s Br.") at 12.) Specifically, Simmons states:

> The Administrative Law Judge's . . . decision is predicated upon an improper legal standard because the ALJ found that 'his mental symptoms are controlled when on medication such as Geodon.' (Pl.'s Br. at 12.) The correct method is to take the claimant's functioning as it appears in the record—even if the individual is not compliant with treatment—and determine the RFC. If the RFC results in a finding of disabled, then the ALJ must make findings to determine if the claimant has a good reason for not following the prescribed treatment. Social Security Ruling (SSR) 82-59 sets forth the Commissioner's policy and describes the specific criteria necessary for a finding of failure to follow prescribed treatment under 20 CFR 416.930.

(Pl.'s Br. at 12-13.) Simmons acknowledges that an impairment that reasonably can be remedied or controlled by medication or therapy cannot serve as a basis for a finding of a disability. (Pl.'s Br. at 13.")  However, Simmons argues that pursuant to SSR 82-59, a determination that an individual has failed to follow prescribed treatment may be made only after following the steps set forth in SSR 82-59. (Pl.'s Br. at 13.) Simmons claims that the ALJ circumvented the requirements of SSR 82-59 by making an RFC determination that accounted for presumed functioning while following treatment. (Pl.'s Br. at 14.) Simmons argues that "[w]hen determining Simmons' RFC,

the ALJ should have based his RFC on the exacerbated symptoms and limitations he found in the record rather than reduce them to account for treatment compliance." (Pl.'s Br. at 15.) Simmons states that, according to case law, when it can be inferred that the ALJ based a finding of disability on the lack of compliance, then the requirements of SSR 82-59 must be followed as if the ALJ made an express finding as to noncompliance. (Pl.'s Br. at 16.) Simmons claims that, "[b]ecause the ALJ ignored the law, he made no findings whether Simmons' schizoaffective disorder and/or bipolar disorder interfered with his ability to comply with his physician's instructions about treatment." (Pl.'s Br. at 18.)

Defendant, on the other hand, argues that the ALJ did not err because "an impairment that reasonably can be remedied or controlled by medication or therapy cannot serve as a basis for a finding of disability." (Defendant's Brief ("Def.'s Br.") at 5.) Defendant claims that Simmons' reliance on SSR 82-59 is "mistaken" because SSR 82-59 "only applies to claimants who would otherwise be disabled within the meaning of the Act" and "it does not restrict the use of evidence of noncompliance for a disability hearing." (Def.'s Br. at 5–6.) Relying on *Johnson v. Commissioner of Social Security*, No. 3:11-CV-3126-L(BF), 2013 WL 632104 (N.D. Tex. Feb. 4, 2013) and *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001), Defendant claims that "the ALJ in this case never determined that Plaintiff was disabled and that compliance would restore Simmons' ability to work." (Def.'s Br. at 8.) Instead, the "ALJ determined that, even with Plaintiff's periods of noncompliance, Plaintiff was not disabled" and the "ALJ used the evidence of Plaintiff's noncompliance to weigh the credibility of Plaintiff's subjective claims of mental limitations." (Def.'s Br. at 8.) Defendant argues that, consequently, SSR 82-59 does not apply to this case. (Def.'s Br. at 8.)

In some cases, a finding of noncompliance with medical treatment precludes a finding of disability. 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). SSR 82-59 sets forth the "criteria necessary for a finding of failure to follow prescribed treatment when evaluating disability." SSR 82–59, 1982 WL 31384, at *1. According to SSR 82-59, "[i]ndividuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment." "[T]he ALJ must follow various requirements set forth in SSR 82-59 before making a finding of noncompliance . . . ." *Lindsey v. Astrue*, No. 3:09-CV-1649, 2011 WL 817173, at *8 (N.D. Tex. Mar. 9, 2011).

Typically, SSR 82-59 only "applies to explicit determinations of non-compliance . . . after a finding that the plaintiff is disabled at step 5." *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-3126, 2013 WL 632104, at *20 (N.D. Tex. Feb. 4, 2013). However, "the [ruling] can also apply where the ALJ makes an implicit or explicit determination of noncompliance . . . prior to step 5." *Johnson*, 2013 WL 632104, at *20; *see Mitchell v. Colvin*, No. 3:11-cv-2664-BN, 2013 WL 4546729, at *7 (N.D. Tex. Aug. 28, 2013). *Lindsey*, 2011 WL 817173, at *8. In other words, if the ALJ's ultimate finding that a claimant was not disabled is based significantly on the ALJ's perception that the plaintiff's failure to follow a prescribed treatment caused the condition to be worse than it might otherwise be, then the requirements of SSR 82-59 apply. *See Johnson*, 2013 WL 632104, at *21 (analyzing the decision in *Ibarra v. Commissioner of Social Security*, 92 F. Supp. 2d 1084 (D. Or. 2000)). On the other hand, if the ALJ considers the plaintiff's noncompliance merely in assessing the credibility of his subjective complaints, then the requirements of SSR 82-59 are inapplicable. *See Johnson*, 2013 WL 632104, at *20-21 (stating

that, because the ALJ used Plaintiff's non-compliance with her medication only in terms of the credibility determination and not in finding that Plaintiff was not disabled, the ALJ was not required to follow the requirements set forth in SSR 82-59); *Clark v. Astrue*, No. 4:12-0350, 2013 WL 105017, at *7 (S.D. Tex. Jan. 8, 2013) ("It is true, as Defendant argues, that SSR 82-59 need not be followed when the ALJ considers the claimant's non-compliance only in connection with the claimant's credibility and with the severity of the claimant's subjective symptoms.").

In this case, the ALJ found that Simmons was not disabled at Step 5 because there were jobs that existed in significant numbers in the national economy that Simmons could perform. (Tr. 18-19.) In making his decision, the ALJ made the following statements regarding or relating to Simmons' noncompliance with prescribed medication:

- "The claimant has had a history of psychosis with auditory hallucinations, irritability, paranoia, and a history of noncompliance with medication." (Tr. 14.)

- "He was hospitalized for 4 days in 2013 due to non-compliance with medication." (Tr. 14.)

- "In February 2014, he was again noted to be non-compliant with medication." (Tr. 14.)

- "Compliance with prescribed treatment is a condition precedent to eligibility for disability benefits. 20 CFR [§] 416.930." (Tr. 14.)

- "Medication makes him feel better." (Tr. 14, 16.)

- "He has trouble remembering to do things such as taking his medication." (Tr. 14.)

- "The claimant's mother testified as follows. The claimant moved in with her because he was forgetful. His mind was not there all the time. She monitors his medication. He does not take medication on his own or takes too much. He gets fidgety and very angry daily but he is not as bad when he is on medication." (Tr. 14.)

- "However, his mother testified that he can get angry especially when he is not compliant with medication." (Tr. 14.)

- "With regard to concentration, persistence or pace, the claimant has moderate difficulties. He has trouble remembering to do things. His mother testified that his mind is 'not all

there' all the time. However, he has normal memory and concentration when he is compliant with medication." (Tr. 14.)

- "[T]he claimant has had one or two episodes of decompensation, which have been of extended duration. The undersigned notes that these episodes were secondary to his non-compliance with medication. (Tr. 15.)

- "The undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria. He can independently engage in the activities of daily living when he is compliant with his medication." (Tr. 15.)

- "He has trouble with memory such as with things to do and with taking his medication." (Tr. 16.)

- "Upon examination in February 2014, the claimant complained of difficulty sleeping. He was noted to have a normal gait. He had stopped taking his medication. His memory was intact. He had poor concentration." (Tr. 16.)

- "He was noted to be non-compliant with his diabetic medication and he had a sugar greater than 500." (Tr. 17.)

- "He was psychiatrically admitted on April 30, 2015. He stated that he did not need psychotropic medication as they never helped him." (Tr. 17.)

- "On August 13, 2015, he was psychiatrically admitted. He admitted that he was not taking his of his [sic] psychotropic or his diabetes medication. He complained of an evil spirit in his head telling him to do different things. . . Over the course of the hospital stay, his symptoms improved and calmed on Geodon. His sleeping improved on Trazodone. . . . On September 2015, the claimant admitted that he had been out of Geodon for a week, and stated that he just needs his Geodon . . . ." (Tr. 17.)

- "The claimant's residual functional capacity has included all the limitations consistent with the evidence of record. He does well and his mental symptoms are controlled when on medication such as Geodon. The record, as fully discussed above, documents that exacerbations of the claimant's mental symptoms and/or limitations are secondary to his non-compliance with prescribed treatment. Compliance with prescribed medication is a condition precedent to eligibility for benefits." (Tr. 17.)

Based on the foregoing, it is clear that the ALJ assumed compliance with prescribed mediation when making his RFC determination. (Tr. 15-17.) Specifically, the ALJ stated several times that compliance with medication was a condition precedent to eligibility and found, while discussing the RFC determination, that Simmons did well and his impairments were controlled

9

when he was taking his medication. Furthermore, the ALJ noted that the exacerbations of his mental symptoms and limitations were the result of his non-compliance with prescribed medications and appears to have crafted his RFC determination based on the assumption that Plaintiff was complying with prescribed medical treatment. (Tr. 17.) As a result, the ALJ failed to determine whether Simmons is disabled when not taking his medications and then follow the procedural safeguards set forth in SSR 82-59 regarding failure to follow prescribed treatment. *See Ibarra v. Commissioner*, 92 F.Supp.2d 1084, 1087 (D. Or. 2000) ("The ALJ did not expressly purport to deny claimant benefits on the ground that she failed to follow prescribed treatment . . . but his comments . . . and his ultimate finding that claimant is not disabled, rest[ed], in significant part, on his expressed perception that her failure to follow a prescribed treatment caused her [bipolar] condition to be worse than it might otherwise be.").[1] Because such a failure resulted in prejudice to Plaintiff, remand is required "so that the ALJ may develop the record to determine whether Plaintiff justifiably failed to undergo the treatment prescribed and if following the treatment would restore capacity to engage in any" substantial gainful activity. *Mitchell*, 2013 WL 4546729, at *8 (finding that the ALJ's failure to apply the requirements in SSR 82-59 prejudiced Plaintiff).

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

---

[1] Before making a finding that a claimant does not have a justifiable reason for failing to follow prescribed treatment, the ALJ must provide the claimant with (i) notice of the effect of noncompliance on his application for benefits, (ii) occasion to explain any seeming noncompliance, and (iii) opportunity to undergo the prescribed treatment. *See* SSR 82–59, 1982 WL 31384, at * 5.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 14, 2018** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 31, 2018.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv